FILED
CLERK, U.S. DISTRICT COURT

10/5/2020

CENTRAL DISTRICT OF CALIFORNIA
BY: ____CW_____ DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| APRIL BECERRA-SOUTH, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>HOWROYD-WRIGHT EMPLOYMENT AGENCY, INC., d/b/a APPLEONE EMPLOYMENT SERVICES, and DOES 1 through 25,<br><br>Defendants. | Case No.: CV 18-08348-CJC(FFMx)<br><br><br>**ORDER GRANTING IN SUBSTANTIAL PART PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** [Dkt. 44] |

## I. INTRODUCTION

Plaintiff April Becerra-South brings this putative class action against Defendant Howroyd-Wright Employment Agency, Inc., doing business as AppleOne Employment Services, and unnamed Does on behalf of all of Defendant's hourly employees in the state of California who were beneficiaries of Defendant's Voluntary Employees

Beneficiary Association Plan ("VEBA") trust. (Dkt. 7 [First Amended Complaint, hereinafter "FAC"].) Plaintiff alleges that Defendant violated various provisions of the California Labor Code by failing to pay its employees accrued vacation benefits upon termination of their employment. (*Id.* ¶ 11.) In response, Defendant contends that it was not required to pay employees for unused accrued vacation time because Defendant had created a VEBA trust for their benefit. (Dkt. 44 [Motion for Preliminary Approval, hereinafter "Mot."] at 3.) Plaintiff asserts claims for (1) failure to provide vacation pay under California Labor Code § 227.3, (2) unfair business practices under California Business and Professions Code § 17200 et seq., (3) failure to pay all wages at termination of employment under California Labor Code § 203, (4) failure to provide proper and accurate paycheck stubs under California Labor Code § 226; and (5) penalties under the Private Attorneys General Act ("PAGA"), California Labor Code § 2698 et seq. (FAC.) This action was originally filed in Los Angeles County Superior Court in May 2018 and was removed to this Court a few months later. (Dkt. 1.) The operative FAC was filed in October 2018 and the parties subsequently proceeded to discovery and settlement negotiations. (FAC.)

On May 22, 2020, the parties attended a full day mediation before the Honorable Carl J. West (Ret.). (Dkt. 44-1 [Declaration of Michael Gould, hereinafter "Gould Decl."] ¶ 11.) The parties were unable to resolve the matter at mediation and negotiations and discovery continued. (*Id.* ¶¶ 11–13.) The following month, in June 2020, the parties entered into a settlement agreement (the "Settlement"), which provides for the payment of $600,000 to resolve the claims of 486 class members. (*Id.* ¶ 14.) Of that amount, $382,000 will be distributed to class members, $195,000 will pay for attorney's fees and costs, and $5,000 will be paid to Plaintiff as a class-representative-incentive award. (*Id.* Ex. 1 ¶¶ 11, 12, 38.) Now before the Court is Plaintiff's unopposed

motion for preliminary approval of the Settlement. (Mot.) For the following reasons, Plaintiff's motion is **GRANTED IN SUBSTANTIAL PART**.[1]

## IV. DISCUSSION

To determine whether preliminary approval of a settlement agreement is appropriate, the Court reviews (1) the requirements for class certification, (2) the fairness of the proposed settlement, (3) the attorney's fees and incentive awards requested, (4) the request for appointment of a settlement administrator, and (5) issues relating to notice of the proposed settlement.

### A. Class Certification Requirements

Pursuant to Federal Rule of Civil Procedure 23, Plaintiff seeks provisional certification of a class for settlement purposes only. The proposed settlement class is defined to include "all individuals formerly employed by Defendant in California who were paid hourly and who were beneficiaries of the . . . VEBA Trust between May 16, 2014 to the date of preliminary approval." (Gould Decl. Ex. 1 ¶ 7.)

When a plaintiff seeks conditional class certification for purposes of settlement, the Court must ensure that the four requirements of Federal Rule of Civil Procedure 23(a) and at least one of the requirements of Rule 23(b) are met. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997); *Staton v. Boeing Co.*, 327 F.3d 938, 952–53 (9th Cir. 2003). Under Rule 23(a), the plaintiff must show the class is sufficiently numerous, that there are questions of law or fact common to the class, that the claims or defenses of the

---

[1] Having read and considered the papers presented by the parties, the Court finds this matter appropriate for disposition without a hearing. *See* Fed. R. Civ. P. 78; Local Rule 7-15. Accordingly, the hearing set for October 19, 2020 at 1:30 p.m. is hereby vacated and off calendar.

representative parties are typical of those of the class, and that the representative parties will fairly and adequately protect the class's interests. Under Rule 23(b), the plaintiff must show that the action falls within one of the three "types" of classes. Here, Plaintiff seeks certification pursuant to Rule 23(b)(3). Rule 23(b)(3) allows certification where (1) questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and (2) a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

### 1. Rule 23(a) Requirements

#### a. Numerosity

Rule 23(a)(1) requires that "the class is so numerous that joinder of all members is impracticable." "No exact numerical cut-off is required; rather, the specific facts of each case must be considered." *In re Cooper Cos. Inc. Sec. Litig.*, 254 F.R.D. 628, 634 (C.D. Cal. 2009) (citing *Gen. Tel. Co. of Nw., Inc. v. E.E.O.C.*, 446 U.S. 318, 330 (1980)). "As a general matter, courts have found that numerosity is satisfied when class size exceeds 40 members." *Moore v. Ulta Salon, Cosmetics & Fragrance, Inc.*, 311 F.R.D. 590, 602–03 (C.D. Cal. 2015); *see Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466, 473–74 (C.D. Cal. 2012). Here, numerosity is satisfied because there are 486 class members. (Gould Decl. ¶ 23.)

#### b. Commonality

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." The plaintiff must "demonstrate that the class members 'have suffered the same injury,'" which "does not mean merely that they have all suffered a violation of the same provision of law." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (quoting

-4-

*Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 (1982)). Rather, the plaintiff's claim must depend on a "common contention" that is capable of class-wide resolution. *Id.* This means "that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.*

Plaintiff alleges that Defendant maintained a common policy and practice of failing to pay its employees for their unused accrued vacation time upon termination of their employment. (*See* FAC ¶ 11.) Resolution of the class's claims therefore presents common questions including (1) whether Defendant had a policy or practice of withholding accrued vacation pay from its employees upon termination of their employment, and (2) whether that policy or practice violated California law. Those questions are central to each class member's claims and their resolution will help determine, "in one stroke," whether Defendant violated the law. *See Falcon*, 457 U.S. at 157.

### c. Typicality

Rule 23(a)(3) requires that the "claims or defenses of the representative parties are typical of the claims or defenses of the class." Representative claims are "typical" if they are "reasonably coextensive with those of the absent class members; they need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). Here, Plaintiff alleges that, like every other class member, she was not paid her accrued vacation wages upon termination of her employment, she was subject to Defendant's vacation policy, and she was a beneficiary of Defendant's VEBA trust. (*See* FAC ¶¶ 11–12.) Accordingly, Plaintiff's claims are "reasonably coextensive" with those of the class. *See Hanlon*, 150 F.3d at 1020.

//

### d. Adequacy

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." This factor requires (1) a lack of conflicts of interest between the proposed class and the proposed representative plaintiff, and (2) representation by qualified and competent counsel that will prosecute the action vigorously on behalf of the class. *Staton*, 327 F.3d at 957. The concern in the context of a class action settlement is that there is no collusion between the defendant, class counsel, and class representatives to pursue their own interests at the expense of the interests of the class. *Id.* at 958 n.12.

There is no evidence of a conflict of interest between Plaintiff and the class. Plaintiff's claims are identical to those of the class and she has every incentive to vigorously pursue those claims. Nor is there any evidence that Plaintiff's counsel will not adequately represent or protect the interests of the class. Plaintiff's counsel, Michael Gould of Gould & Associates, has extensive experience litigating matters related to labor and employment law, including numerous wage-and-hour class actions. (*See* Gould Decl. ¶¶ 15–17.) Counsel has vigorously prosecuted this matter, and his efforts led to the present Settlement. The record indicates that he has represented the class capably and adequately. (*Id.* ¶¶ 5–14.) For example, he reviewed thousands of documents produced by Defendant and negotiated the settlement before the Court. (*Id.* ¶ 7.)

### 2. Rule 23(b) Requirements

In addition to the requirements of Rule 23(a), Plaintiff must satisfy the requirements of Rule 23(b) to show that the action falls within one of the three "types" of classes. Here, Plaintiff seeks certification under Rule 23(b)(3). Rule 23(b)(3) allows certification where (1) questions of law or fact common to the members of the class

predominate over any questions affecting only individual members, and (2) a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

### a. Predominance

Although the predominance requirement overlaps with Rule 23(a)(2)'s commonality requirement, it is a more demanding inquiry. *Hanlon*, 150 F.3d at 1019. The "main concern in the predominance inquiry . . . [is] the balance between individual and common issues." *In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 571 F.3d 953, 959 (9th Cir. 2009). The plaintiff must show that "questions common to the class predominate, not that those questions will be answered, on the merits, in favor of the class." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 459 (2013).

Plaintiff has shown that questions common to the class predominate over any questions affecting only individual members. The central question in this case is whether Defendant withheld accrued vacation pay from its employees upon termination of their employment in violation of California law. That question can be resolved using common evidence regarding Defendant's VEBA trust as well as Defendant's policy and practice on withholding vacation pay.

### b. Superiority

Class actions certified under Rule 23(b)(3) must also be "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Courts consider four nonexclusive factors in evaluating whether a class action is the superior method for adjudicating a plaintiff's claims: (1) the interest of each class member in individually controlling the prosecution or defense of separate actions,

(2) the extent and nature of any litigation concerning the controversy already commenced by or against the class, (3) the desirability of concentrating the litigation of the claims in the particular forum, and (4) the difficulties likely to be encountered in the management of a class action. *Id.*

The Court finds that proceeding as a class is superior to other methods of resolving this case. A class action may be superior "[w]here classwide litigation of common issues will reduce litigation costs and promote greater efficiency." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996). A class action may also be superior when "no realistic alternative" to a class action exists. *Id.* at 1234–35. Here, given the common issues presented by all class members, adjudicating these claims on an individual basis for 486 plaintiffs would be not only inefficient, but also unrealistic. Additionally, although the Court foresees no management problems from litigating this dispute as a class action, the Supreme Court has held that a district court "need not inquire whether the case, if tried, would present intractable management problems" in a "settlement-only class certification." *Amchem*, 521 U.S. at 620. Accordingly, Plaintiff's proposed class is appropriate for provisional certification under Rules 23(a) and 23(b)(3).

### B. Fairness of the Proposed Settlement

Plaintiff seeks preliminary approval of the Settlement. Rule 23(e) "requires the district court to determine whether a proposed settlement is fundamentally fair, reasonable, and accurate." *Staton*, 327 F.3d at 959 (quoting *Hanlon*, 150 F.3d at 1026). To determine whether this standard is met, courts consider factors including "the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; . . . and the reaction of the class members to the

proposed settlement." *Id.* (quoting *Molski v. Gleich*, 318 F.3d 937, 953 (9th Cir. 2003)). At the preliminary approval stage, a full "fairness hearing" is not required. *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007). Rather, the inquiry is whether the settlement "appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *Id.*

### 1. Class Member Compensation

Having reviewed the arms-length negotiation process and substantive terms of the Settlement, the Court finds no obvious deficiencies or grounds to doubt its fairness. *See id.* Each class member will likely receive a meaningful sum—payouts will depend on the amount of vacation time accrued by each member but the average payment to class members is estimated to be $786. (Mot. at 4; Gould Decl. ¶ 23.) Moreover, there is no evidence of collusion during the parties' settlement negotiations. Indeed, "[t]he assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive." *Satchell v. Fed. Express Corp.*, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007).

The Settlement also presents a fair compromise in light of the risks and expense of continued litigation. Litigation had reached a stage where the parties had a clear view of the strengths and weaknesses of their positions. Specifically, the parties had the benefit of significant discovery, including thousands of bank records, tax returns, and written policies produced by Defendant, as well as a full day of mediation. (Gould Decl. ¶ 7, 11.) With that information, the parties were able to realistically value Defendant's liability and assess the risk of moving forward with class certification, motion practice, and trial. The $600,000 settlement amount represents 21% of Defendant's potential exposure in

this case. (*Id.* ¶ 23.) Although that percentage may appear low, Plaintiff acknowledges that she faced significant hurdles to recovery, such as Defendant's potential ERISA-preemption defense. (*Id.*; Mot. at 13.) Accordingly, at this preliminary stage, it appears that the Settlement reflects a fair result.

### 2. Attorney's Fees

The Settlement provides for $180,000 in attorney's fees and $15,000 in costs, plus approximately $10,500 in claims administration costs. (Gould Decl. Ex. 1 ¶¶ 38, 40.) That amount reflects about 34% of the $600,000 settlement amount. (Id. ¶ 12.) The Ninth Circuit has held that 25% of the total settlement amount is the "benchmark" for a reasonable fee award, and courts must provide adequate explanation in the record of any "special circumstances" to justify a departure from this benchmark. *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942–43 (9th Cir. 2011) (citing *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990)); *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989) ("We note with approval that one court has concluded that the 'bench mark' percentage for the fee award should be 25 percent. That percentage amount can then be adjusted upward or downward to account for any unusual circumstances involved in this case." (citation omitted)). The Court has no reason to believe that there are any special or unusual circumstances that apply in this case, and Plaintiff has cited none. (*See* Mot. at 13.) Indeed, Plaintiff has not filed any substantive motions during litigation. Accordingly, at this time, the Court preliminarily approves only $150,000 in attorney fees, or 25% of the settlement amount. The Court will expect detailed evidence and declarations supporting the requested fee award at the final approval stage.

//

### 3. Incentive Award

Plaintiff seeks a $5,000 incentive award to compensate the class representative for her time and efforts on behalf of the class. Incentive awards are payments to class representatives for their service to the class in bringing the lawsuit. *Radcliffe v. Experian Info. Sols. Inc.*, 715 F.3d 1157, 1163 (9th Cir. 2013). Such awards "are fairly typical in class action cases" and are discretionary. *Rodriguez v. W. Pub. Corp.*, 563 F.3d 948, 958 (9th Cir. 2009) (emphasis removed). Although they "typically range from $2,000.00 to $10,000.00 . . . , [h]igher awards are sometimes given in cases involving much larger settlement amounts." *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 267 (N.D. Cal. 2015) (collecting cases); *see In re Toys R Us-Del., Inc.-Fair & Accurate Credit Transactions Act Litig.*, 295 F.R.D. 438, 470 (C.D. Cal. 2014) (explaining that California district courts typically approve incentive awards between $3,000 and $5,000). In the Ninth Circuit, a $5,000 incentive award is "presumptively reasonable." *See Bellinghausen* 306 F.R.D. at 266. The Court sees no reason to deviate from that presumption here and preliminarily approves the $5,000 incentive award.

### 4. PAGA Payment

The Settlement includes a PAGA payment of $10,000, with $7,500 (75% of the $10,000) being paid to the California Labor and Workforce Development Agency, and $2,500 (25% of the $10,0000) being paid to class members as part of the net settlement amount. (Gould Decl. Ex. A ¶ 19.) The Court preliminarily finds that the proposed payment appears adequate and fair given the difficulty Plaintiff likely would have had in recovering the full $48,600 in PAGA penalties sought here. (*See id.* ¶ 23.)

///

### C. Settlement Administrator

Plaintiff asks the Court to appoint CPT Group, Inc. ("CPT") as settlement administrator. The parties have jointly agreed to use CPT as the settlement administrator, (Gould Decl. Ex 1 ¶ 3), and they represent that they do not have any financial interest in CPT or otherwise have a relationship with CPT that could create a conflict of interest, (*id.*). Accordingly, the Court appoints CPT as settlement administrator. Detailed evidence supporting administrator expenses will be required before final approval.

### D. Notice of the Proposed Settlement

Finally, Plaintiff seeks approval of the proposed manner and form of the notice that will be sent to the class members. For Rule 23(b)(3) classes, courts "must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).

The Court finds the proposed manner of notice is adequate. Plaintiff proposes a notice protocol centering on direct mail. Following preliminary approval, Defendant will provide a list of class members to the settlement administrator, CPT. (Gould Decl. Ex. A ¶ 46.) CPT will run the names and addresses from this list through the National Change of Address Database and update its information accordingly. (*Id.* ¶ 47.) CPT will then mail a notice to each class member via first class mail and perform skip traces on any notice package returned as undeliverable. (*Id.*)

However, the form of notice does not meet all of the requirements of Rule 23(c)(2)(B). Notice to class members must "clearly and concisely state, in plain, easily understood language (i) the nature of the action; (ii) the definition of the class certified;

(iii) the class claims, issues or defenses; (iv) that the class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)." Fed. R. Civ. P. 23(c)(2)(B). Here, the proposed notice informs the class members about all of this information except that they may enter an appearance through an attorney. *See* Fed. R. Civ. P. 23(c)(2)(B)(iv); (Gould Decl. Ex. A ¶ 48; Mot. at 20.) The Court expects that the parties will add this information to the proposed notice before it is distributed.

## V. CONCLUSION

For the foregoing reasons, the Court **GRANTS** provisional certification of the class for settlement purposes and **GRANTS IN SUBSTANTIAL PART** preliminary approval of the Settlement. The Court hereby **APPOINTS** Plaintiff April Becerra-South as Class Representative, Michael Gould of Gould & Associates, PLC as Class Counsel, and CPT as settlement administrator. The Court also **APPROVES IN SUBSTANTIAL PART** the proposed notice but **ORDERS** that it must be edited to notify members that they may enter an appearance through an attorney. Once that information is included, the proposed notice shall be disseminated to the class as provided in the Settlement. The final approval hearing will be held on **Monday, January 25, 2021, at 1:30 p.m.** In light of the settlement, the Pretrial Conference and Jury Trial dates are **vacated** by the Court and taken off calendar.

DATED: October 5, 2020

HON. CORMAC J. CARNEY

UNITED STATES DISTRICT JUDGE